### TOM WARREN v. THE STATE.

#### *No. 114. Decided March 9.*

**1. Special Instructions—Practice.**—Where a special requested instruction is refused, an exception should be taken to the ruling of the court in order to entitle the same to consideration on appeal.

**2. Murder—Self-Defense.**—Where on a trial for murder several witnesses testified to a difficulty between defendant and one R., in which R. drew a pistol, whereupon defendant, remarking "I see you are a gun fighter," immediately left the room, and that in a few moments thereafter, when the room door was again opened, they saw defendant immediately in front of it with a pistol in his hand, *held*, that the court properly refused to charge upon the law of self-defense based solely upon the testimony of another witness, who stated that he saw no pistol in defendant's hands until defendant fired at R., who had already drawn his pistol.

**3. Manslaughter.**— On a trial for murder, where the evidence fails to disclose any fact or matter tending to establish "adequate cause," it was proper for the court to refuse and decline to charge upon the law of manslaughter.

**4. Testimony as to Defendant's Professional Business.**— It was not error for the court to permit proof that defendant was a professional pugilist and champion of his class, to sustain the testimony of the State's witness R., that R. drew his pistol in self-defense in the first instance, and not with any desire to seek a quarrel with or provoke defendant.

**5. Right of Defendant to Testify after Case is Closed and Argument Begun.**—It was not error for the court to refuse to permit appellant to testify after the evidence in the case was closed and the argument begun.

APPEAL from the District Court of McLennan. Tried below before Hon. L. W. GOODRICH.

Appellant was indicted for the murder of one Clem Stovall, and at his trial was found guilty of murder in the second degree, with punishment assessed at six years in the penitentiary.

The witness for the State, E. S. Root, testified: That he and Philie Gold-

smith went with two women, Mollie Adams and Lillie Meyers, to the wine room in the rear of the St. Charles saloon, in Waco, about half-past 3 or 4 o'clock on the morning of October 16, 1892; that they ordered drinks, and sent the deceased, Clem Stovall, up to the gambling room for one Malloy. Stovall returned and reported that Malloy had gone to Dallas. The porter, Stovall (deceased), returned with drinks, and at the same time Finnegan came in with a picture of Mollie Adams, taken while she was young; and while they were talking and laughing about the picture, the defendant, Warren, came in and interfered in the conversation, and Mollie Adams asked him what he wanted there, that this was a private party; and defendant, Warren, asked her what she had to do with it, and she told him it was a private party and for him to get out. He then called her a damn bitch, and she called him a son-of-a-bitch. Defendant then picked up a glass of beer and started to throw it in her face, and Finnegan and Lillie Meyers took hold of him and told him not to do that. I (witness) told him I had come there with the women and intended to protect them; and he said, "What have you got to do with it, you pimp? I will beat you to death." And he started to me, and as he started I pulled my pistol, and defendant stopped advancing, looked at me a second, and said, "You are a gun fighter, are you?" and left the room. When he left the room I put up my pistol, and we all sat down to drink beer.

Warren was gone about five or six minutes. I was in the act of drinking my beer when Lillie Meyers got up and opened the door, and when she did so I saw the defendant standing in front of the door, with his pistol in both hands, raised and presented in the door at me. As the door opened he shot; he had the gun in both hands, and presented, when I first saw him. His shot struck the negro, Clem Stovall, from which wound he died. I got in the corner, and the defendant pointed his pistol inside and kept his pistol presented. Finnegan told us to put down our pistols, which I did, and defendant came in and picked up my pistol and went out with both pistols. The wine room is about thirty steps from the saloon. There were six persons in the room when the defendant reappeared, viz., Mollie Adams, Lillie Meyers, Jim Finnegan, Clem Stovall, and myself.

On cross-examination, this witness said: That Lillie Meyers remarked that they should go, as defendant might come back. This caused me to expect him, and as soon as I saw him I began to draw my pistol. I had not got it out before he fired, but was trying to draw it when he fired. I began drawing my pistol as soon as I saw defendant. My pistol was out of order; I could not cock it. I was an escort of Lillie Meyers, and Philie Goldsmith was an escort of Mollie Adams.

On re-examination, this witness said: I saw Warren at the door, and he had his pistol drawn, presented in both hands, in the act of firing at

me, and did fire immediately, before I could get hold of my pistol, and before I could draw it    Warren is a pugilist, a professional pugilist, and the ex-champion of his class [this evidence was excepted to and bill taken on its admission], and he is a much stronger man than I am; and that is why I drew my pistol in the first difficulty, when he started towards me and said he would beat me to death.    The wine room is a public room, but when a party goes and occupies it, it is then a private room.    My occupation is a gambler.

The other State's witnesses corroborate the testimony of this witness throughout, as did defendant's witness Philie Goldsmith.    Defendant's witness Jim Finnegan differed from all the other witnesses in the following statement, viz.:   "I did not see Warren with a pistol when he came to the door.    I did not see Warren draw his pistol.    I did not notice Warren with a pistol until he fired.    He fired after Root got his pistol out."

The errors assigned by defendant, in brief, are as follows:

1.  The court erred in refusing to charge on self-defense.

2.  The court erred in refusing to charge on manslaughter.

3.  The court erred in admitting evidence of the fact that defendant was a pugilist.

4.  The court erred in refusing the defendant the right to testify in his own behalf.

*Jno. F. Flint, F. H. Kingsbury*, and *John L Dyer*, for appellant.

*R. L. Henry*, Assistant Attorney-General, for the State.

SIMKINS, JUDGE.—On Sunday, October 16, 1892, at 3 o'clock in the morning, in a wine room in the rear of a saloon in the city of Waco, a party of four persons, consisting of two men and two women, were drinking together, being waited on by the deceased, Clem Stovall, who was a porter employed by the saloon.    One Jim Finnegan went there, and began talking with them, and appellant also went into the room, and a quarrel starting up between him and one of the women, appellant attempted to injure her, but was prevented.    One of the men, one Root, stating he would protect her, appellant moved towards him with a threat of beating him, but was stopped by Root's drawing a pistol.    He said to Root, "I see you are a gun fighter," and hurried from the room, closing the door. After drinking about five minutes, one of the women proposed to leave, as she was afraid appellant would return and cause trouble.    She opened the door, and appellant was standing in front of it with a revolver, which he immediately presented at Root with both hands, and fired.    As soon as the crowd saw appellant in the door they broke for it, to get out, and the porter, Clem Stovall, accidentally got in the way, and was killed.

Appellant was convicted of murder in the second degree, and his punishment assessed at six years, from which he appeals.

1. Appellant complains that the court erred in refusing to give his special instruction on self-defense asked by him.   There was no exception taken to the refusal of the court to give the special requested charge. The sole evidence on which it is claimed the court should have charged on self-defense was that of the witness Finnegan, who testified that when the door was opened appellant was standing with his hands down, and he did not see a pistol in his hand until he fired, and that Root drew his pistol before defendant fired.   The testimony of this witness, under the facts disclosed by the record, was unworthy of any credit, and could have had no weight with the jury.   But concede that in fact he did not see the pistol in defendant's hand until he shot, it would not necessarily be inconsistent with the testimony of all the other witnesses testifying to the difficulty, who stated that as soon as the door opened they saw defendant standing in the door with the pistol in his hand; nor does it disprove the statement of said witnesses that it was defendant's appearance at the door with his pistol drawn that induced Root to draw his own.

Pretermitting the question whether defendant had the right to go off and arm himself, and then return to a place where he had no business, and where he reasonably expected to have a deadly encounter, and conceding the right to a charge on self-defense, if it had been shown that he made no effort to use his pistol until he saw Root was about to take his life by some act then done manifesting such intention, yet in the case at bar there is no such testimony as could have required such a charge.   If defendant, when the door opened, was seen standing in the door with his pistol drawn, as testified to by all the witnesses but one, who did not see it (and this testimony is strongly corroborated by the instant rush of men and women to get out of the room as soon as they saw him), there could be no self-defense in the case, and the court did not err in refusing to give it.

2. Neither did the court err in refusing to charge on manslaughter. The evidence shows that the appellant, upon Root stating he would protect the women, started towards Root, stating he would beat him, but was stopped by his drawing a pistol, and went off remarking, " You are a gun fighter," and was gone five minutes, and returned with a pistol, and almost immediately after the door opened fired upon Root, and killed the porter, Clem Stovall, who got between them.   The record certainly discloses no adequate cause that could have reduced the offense to manslaughter.

3. Nor do we see any error in permitting proof to be offered of the fact that defendant was a professional pugilist, and champion of his class, as it sustains the testimony of Root that he drew his pistol in self-defense

in the first instance, and not with any desire to seek a quarrel or provoke appellant.

4. As to the refusal of the court to permit the appellant to testify after the case was closed and the argument was begun, the counsel in oral argument having admitted there was no error, it is not necessary to discuss it. There is no reversible error in the case, and the judgment is affirmed.

*Affirmed.*

Judges all present and concurring.